# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

**November 7, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

JAMES C. TOMLINSON and )
CHARLES F. McKELVEY, )
                        )
       Plaintiffs/Appellants, )
                        )     Davidson Circuit
                        )     No. 96C-865
VS. )
                        )     Appeal No.
                        )     01A01-9608-CV-00378
EDNA J. KELLEY and )
JEANETTE M. COKE, )
                        )
       Defendants/Appellees. )

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE BARBARA N. HAYNES, JUDGE

For the Plaintiffs/Appellants:                For the Defendants/Appellees:

Jimmy A. Duncan                           Lawrence D. Wilson
Nashville, Tennessee                     Nashville, Tennessee

                                                G. Kline Preston, IV
                                                Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a controversy surrounding the appointment of a local city official. The mayor and the city manager of the City of Berry Hill filed a defamation action in the Circuit Court for Davidson County against two city residents who publicly questioned the circumstances surrounding the interim appointment of a member of the Board of Commissioners. The trial court granted the residents' motion for summary judgment and dismissed the city officials' complaint. On this appeal, the city officials assert that the trial court should not have granted the summary judgment because the record contains evidence that the residents knew or should have known that their critical statements made to a local newspaper were false. We affirm the trial court.

## I.

The seeds of this dispute were sown during the campaign for a seat on the City of Berry Hill Board of Commissioners between James C. Tomlinson, the incumbent mayor who had served on the Board for fourteen years, and Cliff Kelley. Several months prior to the March 12, 1996 election, Edna Kelley, the challenger's mother, and Jeanette Coke received a newsletter dated August 1, 1995, signed by the Board members, containing information stating that the Board had filled two vacant city offices. The newsletter reported that Charles F. McKelvey had resigned as Berry Hill's mayor on July 10, 1995, and that the Board had hired him as city manager one week later. It also reported that on July 10, 1995 the Board had appointed Tolby McPherson as Mr. McKelvey's interim successor and that Mr. McPherson would be a candidate for the Board during the March 1996 election.

The information in the newsletter caught the attention of Mses. Kelley and Coke because they were under the impression that Mr. McPherson had not been appointed until August 14, 1995, and that Berry Hill had a "no rehire" policy that should have prevented the city from hiring Mr. McKelvey as city manager. When Mses. Kelley and Coke confronted Mr. McKelvey about the "no rehire" policy, Mr. McKelvey informed them that the policy did not apply to him.

Mses. Kelley and Coke decided to look into these issues further, and on February 12, 1996, they went to city hall to obtain a copy of the minutes of the Board's July 10, 1995 meeting. The minutes they examined at that time contained no reference either to Mr. McKelvey's resignation or to Mr. McPherson's selection as his interim successor. When asked about these omissions, Mr. McKelvey explained that he had resigned after the July 10, 1995 meeting ended. Mses. Kelley and Coke requested a copy of the minutes of the July 10, 1995 meeting and were told that a copy would be made for them.

Mses. Kelley and Coke continued their quest for additional information because they were convinced that they had not been told the whole story. At a Board meeting later on February 12, 1996, the city attorney dismissed their concerns by observing that the newsletter was not an official document. They also talked with Berry Hill's former mayor who told them that the current mayor had told him that the Board had held an unpublicized meeting in its attorney's office to discuss Mr. McKelvey's resignation and Mr. McPherson's appointment.

Mses. Kelley and Coke were denied copies of the minutes of the July 10, 1995 meeting when they returned to city hall on February 19, 1996. When they re-examined the minutes, they discovered that the minutes had been changed to reflect Mr. McKelvey's resignation. This discovery prompted them to exclaim in the presence of several city employees that "he [Mr. McKelvey] changed the minutes and held a secret meeting. We've got him now, but we've got no proof." When they questioned Mr. McKelvey again, he warned them that they could get into trouble for making such claims. Other city employees also informed them that they had already caused enough trouble. Mses. Kelley and Coke later told a reporter for *The Tennessean* that the minutes of the Board's July 10, 1995 meeting had been changed and that Mr. Tomlinson had held an unpublicized meeting concerning Mr. McPherson's interim appointment.

On March 7, 1996, *The Tennessean* ran a story headlined "Berry Hill election heats up with a meeting controversy" containing assertions by Mses. Kelley and Coke that Mr. Tomlinson had conducted a secret meeting to discuss Mr. McPherson's appointment and that someone had changed the minutes of the Board's July 10, 1995

meeting. Mr. Tomlinson acknowledged in the story that there had been a meeting before Mr. McPherson's formal appointment, but he denied that the meeting violated the Sunshine Law.[1] The story also quoted Mr. McKelvey's denial that he had changed the minutes of the July 10, 1995 meeting.

Messrs. McKelvey and Tomlinson filed a defamation action against Mses. Kelley and Coke the day after *The Tennessean* article appeared. They alleged that Mses. Kelley and Coke had "deliberately and intentionally published false and defamatory allegations" about them with regard to altering the minutes of the Board's July 10, 1995 meeting and to holding a secret meeting to appoint Mr. McPherson to replace Mr. McKelvey on the Board. Mses. Kelley and Coke filed a motion for summary judgment asserting (1) that their comments were protected speech, (2) that they had not acted maliciously, and (3) that their comments were not defamatory. On June 18, 1996, the trial court filed an order granting the summary judgment and dismissing all claims against Mses. Kelley and Coke.

## II.

The outcome of this appeal hinges on a single issue. Since there can be no real dispute about Messrs. Tomlinson's and McKelvey's status as public figures,[2] the controlling question is whether Messrs. Tomlinson and McKelvey have come forward with clear and convincing proof that Mses. Kelley and Coke acted with actual malice when they told the reporter for *The Tennessean* that Mr. Tomlinson had held a secret meeting to discuss Mr. McPherson's appointment as Mr. McKelvey's successor or when they stated that the minutes of the Board's July 10, 1995 meeting had been altered. Like the trial court, we have concluded that Messrs. Tomlinson and McKelvey have not carried their burden.

## A.

---

[1]The election in Berry Hill took place five days after *The Tennessean* story, and Mr. Kelley defeated Mr. Tomlinson by fourteen votes.

[2]Determining whether a person is a public figure is a question of law. *See Ferguson v. Union City Daily Messenger, Inc.*, 845 S.W.2d 162, 166 (Tenn. 1992). Any governmental official whose duties affect the lives or peace and tranquility of citizens or their families is a public figure. *See Press, Inc. v. Verran,* 569 S.W.2d 435, 441 (Tenn. 1978). The members of Berry Hill's Board of Commissioners are clearly public figures.

The standards for reviewing a decision granting a summary judgment are now well-known. Appellate courts review the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hembree v. State*, 925 S.W.2d 513, 515 (Tenn. 1996); *Payne v. Breuer*, 891 S.W.2d 200, 201 (Tenn. 1994). These requirements, as reflected in Tenn. R. Civ. P. 56.03, are first that the record cannot contain any genuine factual dispute concerning the claim or defense asserted in the motion, *see Wyatt v. A-Best Co.*, 910 S.W.2d 851, 854 (Tenn. 1995); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993), and second that the moving party be entitled to a judgment as a matter of law. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).

Decisions granting a summary judgment are not entitled to a presumption of correctness on appeal. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Appellate courts must view the evidence in the light most favorable to the nonmoving party, *see Haynes v. Hamilton County*, 883 S.W.2d 606, 613 (Tenn. 1994), and must draw all reasonable inferences in the nonmoving party's favor. *See Mike v. Po Group, Inc.*, 937 S.W.2d 790, 792 (Tenn. 1996); *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994). A summary judgment should be affirmed only if the undisputed facts and the conclusions reasonably drawn therefrom support the conclusion that the moving party is entitled to a judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d at 26.

Summary judgments are proper in virtually any civil case that can be resolved on legal issues alone. *See Byrd v. Hall*, 847 S.W.2d at 210. They are particularly well-suited for defamation cases because the determination concerning whether the plaintiff is a public figure is a question of law, *see McDowell v. Moore*, 863 S.W.2d 418, 420 (Tenn. Ct. App. 1992), as is the determination concerning whether a public figure has come forward with clear and convincing evidence that the defendant was acting with actual malice. *See Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d 69, 74 (Tenn. Ct. App. 1986).

**B.**

Public figures who desire to pursue defamation actions bear a heavy burden of proof because of our society's commitment to the principle that "debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964). In order to recover damages, they must prove with convincing clarity[3] that the defendant acted with actual malice. *See Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978); *Moore v. Bailey*, 628 S.W.2d 431, 433 (Tenn. Ct. App. 1981).

The concept of actual malice in defamation cases connotes more than personal ill will, hatred, spite, or desire to injure. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510, 111 S. Ct. 2419, 2429 (1991); *McCluen v. Roane County Times, Inc.*, 936 S.W.2d at 939; *Windsor v. Tennessean*, 654 S.W.2d 680, 688 (Tenn. Ct. App. 1983). Rather, it is limited to statements made with knowledge that they are false or with reckless disregard to their truth or falsity. *See Press, Inc. v. Verran*, 569 S.W.2d at 441; *Cloyd v. Press, Inc.*, 629 S.W.2d 24, 27 (Tenn. Ct. App. 1981); Restatement (Second) of Torts § 580A (1977). Determining whether a defendant acted with reckless disregard requires the finder of fact to determine whether the defendant "in fact entertained serious doubts as to the truth of his [or her] publication." *Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d at 75 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 1325 (1968)).

## C.

Even though Mses. Kelley's and Coke's accusations were made during a political campaign, Messrs. Tomlinson and McKelvey have failed to come forward with clear and convincing evidence that Mses. Kelley and Coke knew that their statements were false or that they entertained serious doubts that their statements were true. Taken in the light most favorable to Messrs. Tomlinson and McKelvey, the evidence both in support of and in opposition to the summary judgment motion demonstrates that Mses. Kelley and Coke believed that their statements were true but were frustrated because they believed that the documentary evidence proving their charges had disappeared.

---

[3]*See McCluen v. Roane County Times, Inc.,* 936 S.W.2d 936, 939 (Tenn. Ct. App. 1996); *Trigg v. Lakeway Publishers, Inc.,* 720 S.W.2d at 75.

By the time Mses. Kelley and Coke spoke to the reporter for *The Tennessean*, they had reasonable grounds to believe that the incumbent city officials had not been completely candid about the circumstances surrounding Mr. McPherson's appointment. They had discovered a discrepancy between the Board's August 1, 1995 newsletter and its minutes concerning the date of Mr. McPherson's appointment.[4] They had also examined a version of the minutes of the Board's July 10, 1995 meeting which made no mention of either Mr. McKelvey's resignation from the Board or Mr. McPherson's appointment to take his place.

When Mses. Kelley and Coke questioned the city officials about these issues, Mr. McKelvey, Mr. Tomlinson, and the city attorney dismissed their concerns, and Mr. McKelvey even warned Ms. Coke that "you better watch what you're saying, you're going to be in big trouble." Thereafter, the city employees refused to cooperate with Mses. Kelley and Coke and declined to provide them with copies of the public records they had been promised earlier. Despite the lack of official cooperation, Mses. Kelley and Coke later discovered that the minutes of the Board's July 10, 1995 meeting had been changed and that Mr. Tomlinson had told Berry Hill's former mayor that the Board had held a special, unpublicized meeting in the city attorney's office to discuss Mr. McPherson's appointment.

All these circumstances indicate that Mses. Kelley and Coke had grounds to believe that their statements concerning the unpublicized meeting and the alteration of the Board's minutes were true. They were clearly frustrated because they had been unable to obtain the version of the minutes they had originally read on February 12, 1996, but their statement that "we've got him now, but we've got no proof" is not evidence of actual malice. Citizens are not required to have documentary proof in order to criticize elected officials. Accordingly, we concur with the trial court's conclusion that Messrs. Tomlinson and McKelvey failed to demonstrate by clear and convincing evidence that Mses. Kelley and Coke were acting with actual malice when they informed the reporter for *The Tennessean* of the discrepancy concerning Mr. McPherson's appointment and the later alteration of the Board's minutes.

---

[4]The newsletter stated that Mr. McPherson's appointment to the Board was announced on July 11, 1995; while the Board's minutes reflected that he was actually appointed on August 14, 1995.

## III.

We affirm the summary judgment dismissing the complaint and remand the case to the trial court for whatever additional proceedings may be required. We also tax the costs of this appeal, jointly and severally, to James C. Tomlinson and Charles F. McKelvey and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE