IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# EDNA J. KELLEY, ET AL. V. JAMES C. TOMLINSON, ET AL.

**Direct Appeal from the Circuit Court for Davidson County**
**No. 98C-1532      Barbara N. Haynes, Judge**

---

**No. M1999-01176-COA-R3-CV  - Decided June 16, 2000**

---

The trial court granted summary judgment to the defendants in this malicious prosecution case. Because we find that the plaintiffs raised genuine issues of material fact in regard to the existence of probable cause in the antecedent defamation case, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

CANTRELL, P.J., M.S., delivered the opinion of the court, in which KOCH and CAIN, JJ., joined.

G. Kline Preston, IV and Lawrence D. Wilson, Nashville, Tennessee, for the appellants, Edna J. Kelly and Jeanette M. Coke.

John E. Herbison, Nashville, Tennessee, for the appellees, James C. Tomlinson and Charles McKelvey.

Darrell G. Townsend, Nashville, Tennessee, for the appellee, Dan R. Alexander.

## OPINION

### I. CHANGES AT CITY HALL

This malicious prosecution lawsuit was filed after we affirmed the trial court's dismissal of the antecedent defamation suit. *Tomlinson v. Kelley*, 969 S.W.2d 402 (Tenn. Ct. App. 1997). Although we discussed the circumstances that led to the alleged defamation in our earlier opinion, we must recite them again in order to address the issue of probable cause, which will be dispositive of the current appeal. To avoid confusion, in this section we will refer to the parties by their proper names rather than as "plaintiffs" or "defendants", for the plaintiffs in the defamation case became the defendants in the malicious prosecution case, and vice versa.

In July of 1995, the commissioners of the City of Berry Hill were James Tomlinson, Charles McKelvey and Harold Spray. Mr. McKelvey also served as the appointed mayor. Dan Alexander was the city attorney. A copy of the newsletter of the City of Berry Hill dated August 1, 1995 chronicled several changes in this line-up. According to the newsletter, Mr. McKelvey announced his resignation as commissioner and mayor on July 10; the appointment of Mr. Tolby McPheron as commissioner in his place was announced at a senior breakfast on July 11; and Mr. McKelvey was hired as City Manager after a special meeting on July 17. The signatures of Tomlinson, Spray and McPheron were on the bottom of the newsletter.

Edna Kelley and Jeannette Coke were long-time residents of Berry Hill who frequently attended meetings of the City Commission. In February, 1996, the earlier-published newsletter was brought to their attention. At that time, Ms. Kelley's son, Cliff Kelley, was a candidate for the commissioner's seat held by Mr. Tomlinson. Ms. Coke was Mr. Kelley's campaign treasurer. The newsletter aroused the interest of the two ladies, and they decided to go to City Hall to look at the minutes of the Board of Commissioners.

According to Ms. Kelley, she read the July 10 minutes on this occasion, and they contained no reference to Mr. McKelvey's resignation. She also claimed that Mr. McKelvey came over to the counter where she and Ms. Coke were reading, and they asked him why there was no reference to his resignation in the minutes. He looked at the minutes, and responded that it was because he resigned after the meeting was over.

Ms. Kelley and Ms. Coke returned to City Hall twice more to look at the minutes. They claim that the first time they were denied access to the minutes. They returned again, and noticed that this time the last paragraph in the minutes did discuss Mr. McKelvey's resignation. It reads in pertinent part as follows:

> There being no further business on the agenda . . . Commissioner Spray read a letter from Mayor McKelvey announcing that he was resigning as Mayor of City of Berry Hill effective as of mid-night on the night of July 10, 1995.

Upon reading this paragraph, Ms. Kelley exclaimed "They've changed the minutes. We've got them now. We just don't have any proof." On February 21, Ms. Coke contacted Aissatou Sidime, a reporter for the Tennessean, and told her that she had been refused access to the minutes, and that someone had altered them. She also told the reporter about the contents of the newsletter.

On March 7, 1996, the Tennessean ran an article under Ms. Sidime's byline with the headline "Berry Hill election heats up with a meeting controversy." The article contained accusations by Ms. Coke and Ms. Kelley that the commissioners had held a secret meeting in violation of state law to appoint Mr. McPheron as interim commissioner, and that the minutes had been changed to include Mr. McKelvey's resignation.

The article noted the contradiction between the newsletter announcement of Mr. McPheron's appointment on July 11, and the official vote to approve his appointment on August 14. Mr. McKelvey was also quoted as saying "It'd be a serious offense to change these minutes after they were approved by the sworn board."

## II. THE DEFAMATION SUIT

The day the Tennessean article was published, Mr. Tomlinson and Mr. McKelvey met with Mr. Alexander in Mr. Alexander's office to discuss what they could do about the activities of Ms. Kelley and Ms. Coke, and they decided to sue for defamation. The following day, Mr. Alexander filed a complaint in the Davidson County Circuit Court. The complaint was served on the two ladies after 5:30 p.m. by a uniformed Berry Hill police officer.

The allegations of the complaint were that Ms. Coke and Ms. Kelley had "deliberately and intentionally published false and defamatory allegations" against the two city officials of altering the minutes of the Board's July 10, 1995 meeting, and of holding a secret meeting to replace Mr. McKelvey with Mr. McPheron. The plaintiffs asked for $100,000 in damages.

Ms. Kelley and Ms. Coke filed a motion for summary judgment asserting that their comments were protected speech, that they had not acted maliciously, and that their comments were not defamatory. The trial court granted their motion on June 18, 1996, and dismissed all claims against them.

The commissioners appealed to this court, arguing that the defendants knew or should have known that the critical statements they made to the Tennessean reporter were false. On appeal, we noted that public officials had to meet stringent requirements in order to prevail on a defamation suit. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Because of the importance of free speech on political matters, the Court has held that "debate on public issues should be uninhibited, robust and wide-open." 376 U.S. at 270. A public official who feels that he has been unjustly accused of unethical or illegal acts must prove by clear and convincing evidence that his accusers acted with malice: that is, that they knew that their accusations were false, or that they acted in reckless disregard as to their truth or falsity.

On appeal, we found that the record showed that at the time Ms. Kelley and Ms. Coke spoke to the Tennessean reporter, they had reasonable grounds for believing that the incumbent city officials had changed the minutes, and that those same officials had decided on Mr. McPheron's appointment long before taking any official action. We accordingly affirmed the judgment of the trial court.

### III. THE MALICIOUS PROSECUTION SUIT

On June 4, 1998, Ms. Coke and Ms. Kelley filed suit for malicious prosecution and abuse of process, naming Mr. Tomlinson, Mr. McKelvey, and Mr. Alexander as defendants. They later amended their complaint to add a claim for civil conspiracy.

The plaintiffs claimed that there had been no legal basis for the defamation suit, that the action was filed with the improper motive of silencing them, and that they suffered fear, anxiety, and mental and physical injury as a result of the lawsuit. Ms. Kelley and Ms. Coke asked for $10,000 in compensatory damages, and an unspecified amount of punitive damages.

After the trial court dismissed the abuse of process claim, the defendants filed motions for summary judgment on the claim of malicious prosecution. On August 13, 1999, the trial court granted summary judgment to two of the defendants:

> After consideration of the entire record in this cause, the Court finds and concludes that reasonable minds could not differ as to the existence of probable cause for filing of the antecedent civil action. The Plaintiffs have accordingly failed to present a prima facie case that the defamation action was filed without probable cause. The Court finds further that the Defendants Tomlinson and McKelvey were entitled, as a matter of law, to rely on the advice of their attorney, the Defendant Alexander, that probable cause existed for filing of the defamation action. In light of these findings, the Court also concludes that the Plaintiffs have failed to present evidence sufficient to make a prima facie case of civil conspiracy among the Defendants to maliciously prosecute a civil action.

On August 16, the court also granted summary judgment to Mr. Alexander on all claims. The court rejected subsequent motions by the plaintiffs to be relieved of the summary judgments. This appeal followed.

### IV. THE APPEAL

The standards for reviewing a summary judgment on appeal are well-known, and were discussed at length in the antecedent case, *Tomlinson v. Kelley*, 969 S.W.2d 402 (Tenn. Ct. App. 1997). Decisions granting summary judgment are not entitled to a presumption of correctness on appeal. *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997). Appellate courts view the evidence in the light most favorable to the non-moving party, and will affirm the judgment only if there is no genuine dispute as to material facts, and if the defendants are entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).

In the present case, there are many facts in dispute. The only question is whether those facts raise a genuine dispute as to the existence of the elements of an action for malicious prosecution. In order to prevail on a malicious prosecution claim, a plaintiff must prove that (1) a prior suit or

judicial proceeding was instituted without probable cause, (2) the defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor. *Roberts v. Federal Express Corp.,* 842 S.W.2d 246 (Tenn. Ct. App. 1992). There can be no dispute that the disposition of the defamation suit establishes the third element for malicious prosecution.

## A. MALICE

The definition of malice for purposes of a malicious prosecution lawsuit is not the same as it is in a defamation case. Any improper motive is sufficient to constitute malice when malicious prosecution is charged. *Lawson v. Williamson,* 447 S.W.2d 369 (Tenn. 1969). Ill will or personal hatred need not be shown, though these would certainly be sufficient to establish malice.

Deposition testimony in the record reveals some possible motives for filing the defamation lawsuit. A city employee related a conversation that occurred between herself and Charles McKelvey just before suit was filed. She stated that Mr. McKelvey said that he wanted to scare the ladies so they would shut up and not create a lot of disturbance. He also said he was going to sue them so they would have to hire a lawyer and pay for it. A former city commissioner testified that McKelvey later ". . . told me that he didn't care about the lawsuit, that it had served its purpose anyway, that we were just trying to quieten the girls down."

The trial court did not address the question of malice, probably because there could be no doubt that there was sufficient evidence in the record to infer the existence of improper motive on the part of the defendants. The court instead based its decision solely on a finding of lack of probable cause.

## B. PROBABLE CAUSE

Appellees argue that it is plain from the record that reasonable minds could not differ that they had probable cause to file the defamation suit. They do not elaborate very much on this bare assertion, but instead rely heavily upon the deposition testimony of attorney Alexander that he thoroughly investigated the facts of the case before filing suit, and that the minutes of the City Commission could not have been changed without his knowledge. The appellees characterize arguments in regard to contradictions between Mr. Alexander's testimony and that of the other deponents as "quibbling."

Appellees also point out that the requirements of probable cause are less stringent in civil proceedings than in criminal:

". . . less in the way of grounds for belief will be required to justify a reasonable man in bringing a civil, rather than a criminal suit. Sometimes this is expressed by saying that want of probable cause must be "very clearly proven" or "very palatable" or that "greater latitude" must be allowed than in a criminal case. Apparently, what is meant is merely that the instigator need not have the same degree of certainty as to the facts,

or even the same belief in the soundness of his case, and that he is justified in bringing a civil action when he reasonably believes that he has a good chance of establishing it to the satisfaction of the court or the jury."

*Morat v. State Farm Mutual Auto Insurance Co.,* 949 S.W.2d 692, 695 (Tenn. Ct. App. 1997) quoting *Prosser and Keeton on Torts*, 5th Ed. § 120, p. 893. *See also Kauffman v. A.H. Robins Co.*, 223 Tenn. 515, 523 (Tenn. 1969).

While we acknowledge this distinction, we must also point out that the burden of proof is more stringent for a defamation lawsuit like the present one than it would be for other types of civil suits. As we stated above, in order for public officials to prevail in a defamation lawsuit, they must prove by clear and convincing evidence that their accusers knew that their allegedly defamatory statements were false or that they made such statements in reckless disregard as to their truth or falsity. *See New York Times Co. v. Sullivan*, supra. It is not enough to assert (or even to prove) that the accusations are untrue.

In view of this heightened burden, a public official contemplating a defamation lawsuit against a citizen must make a thorough investigation of the circumstances behind the publication that offended him, to determine whether the prospective defendants had some reasonable basis for believing in the truth of the allegedly defamatory statements. *See Cohen v. Cook*, 462 S.W.2d 502, 506 (Tenn. Ct. App. 1969).

In the present case, it is not completely certain that the commissioners had violated the Open Meetings Law, or that someone had changed the minutes of the June 10 meeting. However, it is clear to this court that a thorough investigation would have revealed that Ms. Kelley and Ms. Coke had a basis for so believing.

Mr. Alexander testified that he did make such an investigation, but contradictions between his testimony and that of the other deponents raise questions of material fact as to his credibility, as well as to whether the purported investigation was in fact adequate. For example, Mr. Alexander testified that Ms. Coke and Ms. Kelley approached him at City Hall and told him that the minutes have been changed, and he told them they were mistaken. The plaintiffs both denied that they ever had a conversation with Alexander regarding the minutes. Mr. Alexander also claimed to have had a conversation with Clarence Watson, a former city commissioner, in which he explained that if the minutes had been tampered with he "would be the first one to raise the red flag." Mr. Watson's affidavit states unequivocally that no such conversation ever took place.

Mr. McKelvey and Mr. Tomlinson deny that they possess any advanced legal knowledge, and in depending so heavily on the testimony of Mr. Alexander, they set up their second line of defense: that they relied upon the advice of their attorney in filing suit, and thus that even if we find there to have been no probable cause, they themselves cannot be held liable.

The defense of advice of counsel is available, however, only to defendants who have disclosed to their attorney all the relevant information that is in their possession, as well as all the information that can be obtained through reasonable diligence. *Sullivan v. Young,* 678 S.W.2d 906 (Tenn. Ct. App. 1984). In the present case, it appears that McKelvey and Tomlinson did not bother to disclose to Mr. Alexander vital information that would have helped him to determine whether there was probable cause for the defamation suit.

For example, Mr. Alexander was not informed of the conversation at City Hall between the appellants and Mr. McKelvey, which set in motion the chain of events that ultimately led the appellants to accuse the commissioners of changing the minutes. Without knowledge of this information, it was easy for Mr. Alexander to believe that the accusation was reckless; with it, he might have shown more restraint before advising his clients that they had grounds for filing suit.

Mr. Alexander also testified that he did not see the August 1 newsletter until after filing suit. It is unclear whether he was at fault for not seeking it out and reading it (the newsletter was mentioned in the Tennessean story, which he did read), or whether McKelvey and Tomlinson were at fault for not bringing it to his attention. In any case, the importance of the newsletter to the question of probable cause cannot be overstated, because it first led Ms. Kelley and Ms. Coke to believe that the Board of Commissioners had violated the open meetings law. There also can be no doubt that Mr. Tomlinson and Mr. McKelvey had knowledge of its contents: not only did Tomlinson sign the newsletter, but there was testimony that McKelvey participated in its preparation.

In view of these facts, it appears to us that Mr. McKelvey and Mr. Tomlinson cannot avail themselves of the defense of advice of counsel. Since the record of this case contains genuine issues of material fact as to the question of probable cause, summary judgment should not have been granted to the defendants. Should the case proceed to trial, the question of probable cause will be for the jury to decide. *See Roberts v. Federal Express Corp.*, 842 S.W.2d 246 (Tenn.1992).

## V.

We reverse the judgment of the trial court. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to appellees, James C. Tomlinson, Charles McKelvey and Dan R. Alexander.