# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 9, 2002 Session

# CARLTON FLATT v. TENNESSEE SECONDARY SCHOOLS ATHLETIC ASSOCIATION, ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 97C-3901     Walter C. Kurtz, Judge

---

### No. M2001-01817-COA-R3-CV - Filed January 9, 2003

---

A high-profile high school football coach and athletic director filed a defamation and false light invasion of privacy claim against the athletic association his school belonged to and other defendants. The Circuit Court of Davidson County granted summary judgment to the defendants because it found no evidence from which a jury could infer malice. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and W. MICHAEL MALOAN, SP. J., joined.

G. Thomas Nebel, Nashville, Tennessee, for the appellant, Carlton Flatt.

Richard L. Colbert, Nashville, Tennessee, for the appellees, Tennessee Secondary Schools Athletic Association and Ronnie Carter.

Mac E. Robinson, Jr., Nashville, Tennessee, for the appellee, Scott Brunette.

## OPINION

## I.

The plaintiff, Carlton Flatt, is a highly successful high school football coach and athletic director at Brentwood Academy, a private school in Williamson County. Brentwood Academy is a member of the Tennessee Secondary Schools Athletic Association (TSSAA), a voluntary association that regulates high school athletics at its member schools. In 1996, a report that Brentwood Academy and Coach Flatt had violated several of TSSAA's rules received widespread media coverage. Both the TSSAA and Mr. Flatt aver that the other side made the charges public. Regardless of who was responsible, we concede that the facts are in dispute on this point.

Ronnie Carter is the executive director of the TSSAA. Scott Brunette is the director of high school athletics for the Metropolitan Government of Nashville and Davidson County. Mr. Carter wrote the letters reciting the facts on which the alleged violations and charges were based. Mr. Brunette furnished Mr. Carter some of the information that was used in the investigation. Mr. Flatt alleges that all Mr. Brunette knew was based on false rumors and that he passed them on to Mr. Carter without any investigation into their accuracy. Mr. Carter addressed the letters to Bill Brown, Mr. Flatt's principal at Brentwood Academy.

The letters implicating Mr. Flatt outlined four violations of the TSSAA's recruiting rule. The first and second violations were based on Mr. Flatt's policy of providing free tickets to Brentwood Academy games to coaches and athletes at area middle schools. Apparently the practice is not a per se violation of the rules, but leaving the decision entirely in the discretion of Coach Flatt was a concern to the TSSAA; and the frequency of the practice was considered by the TSSAA to be an indicator of undue influence being used to attract athletes from other schools. The third concern of the TSSAA was based on Brentwood Academy's conclusion that transfer students became "enrolled" (and thus eligible for unlimited contact) when they had completed the application process and had been accepted – even though they were still attending another school and might not attend Brentwood Academy the next year. According to the TSSAA, being enrolled meant being in regular attendance at a particular school. Thus, a student could only be enrolled at one school at a time. The fourth concern arises from the same interpretation. Mr. Flatt allegedly contacted twelve of the twenty-five students who had been accepted and invited them to participate in spring football practice. Even though the TSSAA recognized that participating in spring practice while enrolled in another school was not a per se violation, the aggressive contact with potential athletes was considered "beyond what is normal and is undue influence."

The letters also contained some charges related to the basketball team and an allegation that "persons connected with and persons not connected with Brentwood Academy" had been recruiting athletes for the school. Although these violations do not single out Mr. Flatt, Mr. Carter is quoted in a subsequent interview as saying that "the violations go all the way to the top." As Mr. Flatt was the athletic director, Mr. Carter's statement may be seen as implicating Mr. Flatt in these infractions as well. As to the actions specifically attributed to Mr. Flatt, they are actually true. He did give free passes to middle school coaches and students; he contacted students after they had applied to Brentwood Academy and invited them to participate in spring practice. The whole imbroglio revolves around rules that Mr. Flatt claims are too vague and internally inconsistent to be enforced. That dispute is being resolved in another forum.

Mr. Flatt sued the TSSAA, Mr. Carter individually, the Metropolitan Government, and Mr. Brunette individually for defamation and invasion of privacy. All defendants made motions for summary judgment on various grounds, and the trial judge granted the motions on a ground critical to both causes of action: the lack of evidence in the record from which a fact-finder could infer actual malice on the part of the defendants.

## II.
## FALSE LIGHT INVASION OF PRIVACY

Mr. Flatt only appealed the dismissal of his false light invasion of privacy claim. In Tennessee we recognize that there is such a tort, and that it differs slightly from the tort of defamation. *See West v. Media General Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001). In *West* the court adopted the definition set out in Section 652E of the *Restatement (Second) of Torts* (1977):

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if
>
> > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> > (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Although the *Restatement* talks in terms of "falsity" and "false light" the truth of the facts published is not an absolute defense to a false light claim. The Court in *West* said:

> "The facts may be true in a false light claim. However, the angle from which the facts are presented, or the omission of certain material facts, results in placing the plaintiff in a false light. Literal accuracy of separate statements will not render a communication true where the implication of the communication as a whole was false . . . . The question is whether [the defendant] made discrete presentations of information in a fashion which rendered the publication *susceptible to inferences* casting [the plaintiff] in a false light. (Citations omitted). Therefore, the literal truth of the publicized facts is not a defense in a false light case.

53 S.W.3d 640, 645, ftn. 5. To achieve the proper balance between First Amendment and privacy interests, the court held that the plaintiff must prove that the defendants acted with actual malice if the plaintiff is a public official or a public figure, or if the claim is asserted by a private individual about a matter of public concern. *Id.* at 647. Mr. Flatt does not contest the conclusion that actual malice is the appropriate test.

Actual malice is usually defined in terms of knowledge of falsity or a reckless disregard for the truth of the matter published. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989); *Tomlinson v. Kelley*, 969 S.W.2d 402 (Tenn. Ct. App. 1997). But if the matter published does not have to be false to sustain a cause of action for false light invasion of privacy, malice must in that case be tested by a knowledge of or a reckless disregard for the false light in which the plaintiff will be placed.

Malice must also be proved by evidence of convincing clarity. *McCluen v. Roane County Times, Inc.*, 936 S.W.2d 936 (Tenn. Ct. App. 1996). This standard most often translates to "clear and convincing" evidence. *See Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d 69 (Tenn. Ct. App. 1986), and it requires the courts to judge, <u>as a matter of law</u>, whether the plaintiff has come forward with sufficient proof to permit a finding of actual malice. *Tomlinson v. Kelley*, 969 S.W.2d 402 (Tenn. Ct. App. 1997); *Cobb v. Time, Inc.*, ____ F.3d ____ (6th Cir. 2002). "[J]udges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'" *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 511 (1984).

### III.
### EVIDENCE OF MALICE

Mr. Flatt argues that the allegations in Mr. Carter's letters made him out as a liar, a cheat, a person who uses undue influence on eighth grade athletes, and a person running an out-of-control athletic program. Whether the words used in the letter are capable of producing that reaction is one question, but if we pass that point for the sake of discussion, the question we must decide is whether there is evidence of convincing clarity in the record that the defendants knew that reaction would be produced or that they acted with reckless disregard of the fact that it might be.

We do not think there is <u>any</u> evidence in the record from which a trier of fact could conclude that the defendants knew or recklessly disregarded the chance that their actions would cause Mr. Flatt to be regarded as dishonest, overbearing, or dedicated to winning at all costs. The words "liar" and "cheat" are Mr. Flatt's own invention. The letters to Brentwood Academy do not even indicate that Mr. Flatt was evasive in the TSSAA investigation. The charges and the subsequent statements to the press attributed to Mr. Carter do not imply that any of the violations were intentional. The term "undue influence" appears in the TSSAA rules as a prohibited act; therefore we do not see how mentioning it in the charges could produce a false impression of Mr. Flatt – when the facts on which the charge rested are admittedly true. Although some of the rumors passed along to Mr. Carter by Mr. Brunette may have turned out to be false, they were not used in the letters that subsequently became public. In addition, a failure to investigate the matters made public is not sufficient to show actual malice, even when a reasonably prudent person would have done so. *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988). Both Mr. Carter and Mr. Brunette were charged with a duty to see that the TSSAA rules were enforced.

The judgment of the court below is affirmed. The cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant. Carlton Flatt.

_____

BEN H. CANTRELL, PRESIDING JUDGE, M.S.