# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 4, 2014 Session

## ROGER BYRGE v. STACEY CAMPFIELD, ET AL.

**Appeal from the Circuit Court for Campbell County**
**No. 14326      John D. McAfee, Judge**

---

### No. E2013-01223-COA-R3-CV-FILED-SEPTEMBER 8, 2014

---

This is a defamation case.  Based on information that he received from a political source, then State Representative Stacey Campfield ("Campfield") posted remarks on his blog alleging that candidate for State House Roger Byrge ("Byrge") had been arrested on drug-related charges.  The information, however, turned out to be false.  Byrge lost the election and sued Campfield for defamation in the Circuit Court for Campbell County ("the Trial Court").  Campfield, asserting that at the time of the posting he had no reason to doubt the accuracy of the information, moved for summary judgment.  The Trial Court granted Campfield's motion.  Byrge appealed.  We hold that the record before us in this case concerning the alleged defamation of a public figure contains evidence that is clear and convincing from which a trier of fact could find actual malice in Campfield's publication of false statements about Byrge.  We reverse the Trial Court and remand this case for further proceedings on Byrge's claims against Campfield for defamation and false light invasion of privacy.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

David H. Dunaway, LaFollette, Tennessee, for the appellant, Roger Byrge.

Jonathan Swann Taylor, Knoxville, Tennessee, for the appellee, Stacey Campfield.

# OPINION

## Background

The context of this case is the Tennessee general election campaign of 2008[1]. Partisan control of the Tennessee State House of Representatives was hotly contested that year. Enter Campfield, then a Republican State Representative for the 18th District. Campfield, who since the events of this case went on to serve as a State Senator, set up a blog called "camp4u." Campfield's blog was a type of interactive portal through which he interacted with constituents and commented on politics of the day. One political topic that caught Campfield's attention was the race in the 36th State House District featuring Democrat Byrge, a veteran deputy sheriff's officer. The race was considered to be a close contest.

On October 14, 2008, Campfield posted the entry on his blog that would spark this lawsuit. The blog post contained allegations that Byrge had a drug-related arrest record. Entitled "A tale of two races," here is the post in its entirety:

> It is a little odd When an east Tennessee paper adds a dig about a middle Tennessee state house race to a story about senate fund raising. I guess it is OK because the dig attacks a Republican running against an incumbent Democrat for an old DUI conviction.
>
> OK. Fair enough. You can say its news.
>
> But don't you think it would be a little more interesting if it was the news about a close open seat race? A race that is not only close in the polls but is also close to Knoxville. Where the story isn't just alcohol related but is also drug related? How could it be better? How bout if the person convicted was running against a police officer? Where could we find such a race? Such an interesting dichotomy? How bout where Roger Byrge is running against police officer Chad Faulkner? Word is a similar mail piece has gone out exposing Byrges multiple separate drug arrests. Including arrests for possession and drug dealing. (I hear the mug shots are gold).

---

[1]As this case was disposed of by summary judgment, the "facts" come from the record in compliance with the summary judgment standard then in effect and have not yet been proven at trial.

Of course in that race the Democrat, Byrges has a chance to win the formerly Republican held seat.  I guess we will see that story about as much as we see the story of the sexual harassment hush money given to keep the Democrat in office who replaced Mark Foley.

No news there, nothing to see, Move along.

posted by the rep @ 6:56 AM

Unfortunately, there was a problem.  The allegations concerning Byrge were false.  Byrge had no such arrest record.  Byrge lost the election, and, in November 2008, sued Campfield for defamation.  Byrge sought extensive damages for libel, false light invasion of privacy, emotional distress, and injury to his reputation. Campfield filed an answer, asserting a host of defenses.  Byrge filed an amended complaint and more procedural matters unfolded. Republican Glen Casada ("Casada"), Chairman of the House Republican Caucus in the Tennessee General Assembly, and the Tennessee Republican Party were added as defendants.  Casada allegedly had supplied Campfield with the false information on Byrge. Casada and the Tennessee Republican Party later were voluntarily dismissed from the suit with prejudice.

In April 2010, Campfield filed a motion for summary judgment.  In support of his motion, Campfield relied on two exhibits: 1) his own affidavit, and 2) discovery responses of Casada.  Campfield also filed a statement of material facts and memorandum of law in support of his motion for summary judgment.  In his affidavit, Campfield explained how he obtained the information on Byrge:

The Post was based on a conversation I had with Glenn Casada ("Casada") some time shortly before the Post was published on October 14, 2008.  Casada is a Representative in the Tennessee House of Representatives for the 63rd District.  In addition to being a State Representative, Casada was also elected as Chairman of the House Republican Caucus in 2007.  Casada was serving as the Chairman of the House Republican Caucus on October 14, 2008 when the Post was published on the Blog.  During this conversation, Casada told me that he had information on Plaintiff.  More specifically, Casada told me that Plaintiff had a criminal record that included arrests for possession of drugs and drug dealing.  I only reported what Casada told me during our conversation.  I relied on Casada's statements because Casada was the Chairman of the House Republican Caucus when the statements about the Plaintiff were communicated to me.  Further, I knew that the Tennessee Republican Caucus frequently researches political candidates and races across

the state during election season.  I believed that the statements about Plaintiff were accurate and truthful at the time that they were published on the Blog on October 14, 2008.  I did not have knowledge of any falsity of the statements about Plaintiff at the time that they were published on the Blog on October 14, 2008.  Further, I did not have any reason to doubt the truth of the statements about Plaintiff at the time that they were published on the Blog on October 14, 2008.  When the accuracy of the information that Casada provided me was questioned, I immediately removed the October 14, 2008 Post from the Blog.  Some time after the Post was removed from the Blog, I learned that the arrest record actually belonged to the Plaintiff's son, Roger Derick Byrge, who also resided with Plaintiff.

(Format modified).

In his discovery responses, Casada addressed his conversation with Campfield regarding Byrge.  Casada stated:

I made the comment to Stacey Campfield during an informal phone conversation.  The information I had was preliminary, and I characterized it as such.  It had been provided to me by researchers for the Tennessee Republican Caucus, as part of the Caucus's efforts to gather information on political candidates and races across the state.  My words to Stacey were "we may have a record of a felony on Roger Byrge."

***

I did not intend for any unverified information to be disseminated, and I qualified my comments to Mr. Campfield.  Unfortunately, I did not have the opportunity to verify anything before Stacey Campfield posted his blog.

In fact, the information gathered by my researchers ultimately showed that the criminal history out of Campbell County involved a "Roger Derick Byrge" and not the candidate "Roger Byrge."

In April 2013, the Trial Court held a hearing on Campfield's motion for summary judgment.  In May 2013, the Trial Court entered an order granting Campfield's motion for summary judgment.  The Trial Court incorporated its oral ruling into its order, which we quote from in relevant part:

Here we have - - and I don't think there's any question in the record. I think the senator was conversing with the Republican apparatus. They apparently had criminal history on a gentleman, this guy's son, a very similar name except the middle name. I can see how you could mess that up. It is what it is. Did the senator have a high degree of awareness that these statements were probably false? I think as a [matter] of law he didn't. I can't figure - - these things have to end - - and, again, I mentioned and I think the appellate courts - - they strike a very reasonable balance.

\*\*\*

And as a matter of law, this matter should be dismissed on the motion for summary judgment. I just simply don't see that what's been articulated in the complaint, I don't see what's been argued here, what's in the record before this Court on the motion for summary judgment even warrants this case going any further. And it's not a Democrat or Republican thing. This has absolutely nothing to do with any of that. It really hasn't. It is what it is. Sometimes you just get beat, and that's just the plain simple truth of the matter. Been there, done that, and it's just the way it is.

Byrge timely filed his appeal to this Court.

### Discussion

One issue is presented to us for review on appeal: whether the Trial Court erred in granting Campfield's motion for summary judgment.[2]

Both sides agree that the *Hannan* standard of review for summary judgment applies in this case. Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

---

[2]Byrge also had claims rooted in outrageous conduct and interference with prospective relationship. Byrge apparently is not contesting on appeal the dismissal of those claims.

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

This being a defamation case, a review of defamation law in Tennessee is in order.[3] "A libel action involves written defamation and a slander action involves spoken defamation. The basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." *Quality Auto*

---

[3]Byrge asks us to consider the defamation case of *Murray v. Hollin*, No. M2011-02692-COA-R3-CV, 2012 WL 6160575 (Tenn. Ct. App. Dec. 10, 2012), *Rule 11 appl. perm. appeal denied April 9, 2013*. *Murray* is designated "NOT FOR CITATION," and we may not rely on it.

*Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994). In *Sullivan v. Baptist Mem. Hosp.*, our Supreme Court explained:

> To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *See* Restatement (Second) of Torts § 580 B (1977); *Press, Inc. v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978). "Publication" is a term of art meaning the communication of defamatory matter to a third person. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994).

*Sullivan v. Baptist Mem. Hosp.*, 995 S.W.2d 569, 571-72 (Tenn. 1999).

This Court addressed the suitability of summary judgment as a means of disposition for defamation and false light cases in *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270 (Tenn. Ct. App. 2007). Byrge concedes that he is a public figure for purposes of this case. This Court stated:

> Summary judgments are particularly well-suited for false light and libel claims because the determination concerning whether the plaintiff is a public figure is a question of law, *see Ferguson v. Union City Daily Messenger, Inc.,* 845 S.W.2d 162, 166 (Tenn.1992); *McDowell v. Moore,* 863 S.W.2d 418, 420 (Tenn. Ct. App. 1992), as is the determination of whether a public figure has come forward with clear and convincing evidence that the defendant was acting with actual malice. *Flatt v. Tenn. Secondary Schs. Athletic Ass'n*, No. M2001-01817-COA-R3-CV, 2003 WL 61251, at *3 (Tenn. Ct. App. Jan. 9, 2003) (No Tenn. R. App. P. 11 application filed); *Tomlinson v. Kelley*, 969 S.W.2d 402, 405 (Tenn. Ct. App. 1997); *Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d 69, 74 (Tenn. Ct. App. 1986). The "determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

> Accordingly, where the actual malice standard applies, the "burden is upon plaintiff to show with 'convincing clarity' the facts which make up the 'actual malice.' " *Trigg v. Lakeway Publishers, Inc.,* 720 S.W.2d at 75. Thus, "a public figure cannot resist a ... motion for summary judgment under Tenn.

R. Civ. P. 56 by arguing that there is an issue for the jury as to malice unless he makes some showing, of the kind contemplated by the Rules, of facts from which malice may be inferred." *Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d at 74. When reviewing a grant of summary judgment to a defendant in such a case, we must "determine, not whether there is material evidence in the record supporting [the plaintiff], but whether or not the record discloses clear and convincing evidence upon which a trier of fact could find actual malice." *Piper v. Mize*, No. M2002-00626-COA-R3-CV, 2003 WL 21338696, at *7 (Tenn. Ct. App. June 10, 2003) (No Tenn. R. App. P. 11 application filed).

*Lewis*, 238 S.W.3d at 283 (footnotes omitted).

This Court also discussed summary judgment in defamation cases in *Hibdon v. Grabowski*, 195 S.W.3d 48 (Tenn. Ct. App. 2005). This Court stated:

The concept of actual malice in defamation cases connotes more than personal ill will, hatred, spite, or desire to injure; rather, it is limited to statements made with knowledge that they are false or with reckless disregard to their truth or falsity. *McWhorter v. Barre*, 132 S.W.3d 354, 365 (Tenn. Ct. App. 2003). Likewise, statements that cannot "reasonably [be] interpreted as stating actual facts about an individual" because they are expressed in "loose, figurative or hyperbolic language," and/or the content and tenor of the statements "negate the impression that the author seriously is maintaining an assertion of actual fact" about the plaintiff are not provably false and, as such, will not provide a legal basis for defamation. *Milkovich v. Lorain Journal*, 497 U.S. 1, 21, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In reviewing the propriety of the trial court's grant of summary judgment to the Defendants in this case, we must determine, upon taking the evidence in the light most favorable to Mr. Hibdon, whether reasonable minds must agree that malice, as defined in the context of libel suits against public figures, has not been proven by clear and convincing evidence. *McCluen v. Roane County Times, Inc.*, 936 S.W.2d 936, 939 (Tenn. Ct. App. 1996) (citing *Goode v. Tamko Asphalt Products, Inc.*, 783 S.W.2d 184 (Tenn. 1989)).

*Hibdon*, 195 S.W.3d at 63.

This Court discussed *Hibdon* and other speech cases in *Shamblin v. Martinez*, No. M2010-00974-COA-R3-CV, 2011 WL 1420896 (Tenn. Ct. App. Apr. 13, 2011), *no appl. perm. appeal filed.* We stated:

The *Hibdon* Court adopted the standard set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)), that, where the plaintiff in a defamation case is a public official or public figure, he or she must also prove that the libelous statement was made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Hibdon*, 195 S.W.3d at 58 (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)). Likewise, the Court in *West* held that the standard at Section 652E(b), which mirrors the actual malice standard employed in *Hibdon* and *New York Times Co. v. Sullivan* for defamation cases, applies in false light invasion of privacy claims where the plaintiff is a public official or public figure or when the claim is brought by a plaintiff who is a private individual about a matter of public concern. *West*, 53 S.W.3d at 647. In this case, Plaintiffs stipulate that they are public figures; consequently, our focus is on whether "the record discloses clear and convincing evidence upon which a trier of fact could find actual malice." *Piper v. Mize*, No. M2002-00626-COA-R3-CV, 2003 WL 21338696, at *7 (Tenn. Ct. App. June 10, 2003).

*Shamblin*, 2011 WL 1420896, at *3.

A review of these precedents reveals that our inquiry should focus on whether Campfield was able to negate the element of actual malice necessary to sustain a defamation claim by public figure Byrge. The standard is whether the record before us contains clear and convincing evidence from which the trier of fact could find actual malice. "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). Campfield, for his part, states that he relied on Casada's representations and only published what Casada told him about Byrge. Campfield argues that Casada, a prominent Republican figure and Chairman of the House Republican Caucus, was a credible source for the information, and that it is not as though he just picked up the information off the street and ran with it.

Casada's discovery responses, however, present a more problematic account for Campfield. According to Casada, the information he conveyed to Campfield merely was *preliminary*. Contrary to Campfield's affidavit, Casada stated that he impressed upon Campfield the preliminary nature of the information and that he did not intend for it to be disseminated without verification. Campfield, in his deposition testimony, acknowledges that he did not do any independent investigating to verify the information about Byrge. Campfield posted the allegations based on what Casada told him.

Crediting Casada's version of his conversation with Campfield, which we must under the summary judgment standard, Casada provided Campfield with preliminary, tentative information not intended for immediate release and that Casada characterized to Campfield the preliminary and tentative nature of this information. Preliminary information is just that–preliminary, not final or authoritative. Casada told Campfield: "we *may* have a record of a felony on Roger Byrge." (Emphasis added). Even accepting that Casada was a credible source of political background information, his statement to Campfield was a *qualified* statement. This qualified statement was materially different from what Campfield claimed Casada told him concerning this information, that "[Byrge] had a criminal record that included arrests for possession of drugs and drug dealing." Reasonable minds could consider it at least reckless to publish information tending to tarnish someone's reputation on the basis of "may have." This conclusion concerning the evidence contained in the record is amplified by Campfield's decision to publish the information without any kind of additional investigation or verification by Campfield and by Campfield's not allowing Casada time to attempt to verify the preliminary information before Campfield published it.

We, therefore, hold that the record before us contains clear and convincing evidence upon which a trier of fact could find actual malice on Campfield's part. Campfield was unable to negate the element of actual malice, and the Trial Court erred in granting Campfield's motion for summary judgment.[4]

This Court recognizes and values the robust, free exchanges in politics that are so central to democracy and our constitutional republic. However, here we have a case not about differences of ideology or opinion, but rather about factually false allegations made against a candidate for public office. Politics may be a rough and tumble endeavor, but, contrary to the vintage Cole Porter song, "anything goes" will not suffice when it comes to publishing factual falsehoods about political rivals. A public figure, even a politician, is neither totally immune from nor totally unprotected by the law of defamation.

We emphasize that we are not previewing, predicting, or prejudging the outcome of the trial. We hold only that there is clear and convincing evidence from which a trier of fact *could* find actual malice under these facts and that summary judgment was in error. We reverse the Trial Court's order granting summary judgment to Campfield, and remand this case to the Trial Court for further proceedings on Byrge's defamation and false light invasion of privacy claims against Campfield.

---

[4]Our holding also applies to the false light invasion of privacy claim.

-10-

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion. The costs on appeal are assessed against the appellee, Stacey Campfield.


_____
D. MICHAEL SWINEY, JUDGE