GLASS *et al. v.* SULLIVAN *et al.*

*(Jackson,* April Term, 1936.)

Opinion filed May 23, 1936.

W. OTIS FRANCE, of Memphis, and SANFORD & TIPTON, of Covington, for plaintiff in error.

BRINGLE & BRINGLE, of Covington, for defendants in error.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is a case brought under the Workmen's Compensation Law of Tennessee (Code 1932, sec. 6851 *et seq.*). The defendant C. H. Sullivan was, on the 9th day of November, 1934, engaged in the business of hauling logs in the state of Tennessee from a point in Tipton county to the city of Memphis. Verble Glass was employed by Sullivan as a truck driver, and it was his duty, under the terms of his employment, to assist in loading logs on a truck and driving it from the Hatchie river bottom to the yards of the Anderson-Tully Mill Company, in Memphis, there unloading the logs, and return with the empty truck to the point of loading. That on said date Verble Glass drove a truck, belonging to Sullivan, loaded with logs, to the yards of the Anderson-Tully Mill Company and there unloaded the same. Glass on the return trip permitted one Fred Billings to drive the truck, and the truck left the highway on a curve, turned over, caught

fire, and burned Verble Glass so severely that he died within a few hours.

Defendants, by way of defense, set up in their joint answer, among other things, the following:

". . . They show that at the time said alleged accident happened deceased employee was not operating defendant's (Sullivan's) motor truck, but prior thereto he had in willful violation of his orders and instructions from defendant employer relinquished the wheel of said motor truck and asked said Fred Billings to drive or operate said motor truck in order that he might go to sleep, and that at the time said accident happened deceased employee was either asleep or was attempting to go to sleep."

The trial judge made no finding with reference to the issue thus tendered by defendants. In their motion for additional findings of fact, among other things, defendants specifically asked that the court find that the defendant employer had instructed the deceased employee not to permit another person to drive the truck. This motion was disallowed. The trial judge should have made a finding with respect to the giving of such instruction, that being one of the issues in the case. Mr. Sullivan was asked:

"Q. What were your regulations, Mr. Sullivan, regarding operation of your trucks?

"A. Just one man was supposed to go on the truck—nobody else with him.

"Q. What were your regulations in reference to picking up anyone?

"A. I had given all the drivers orders not to pick anybody up and let them ride.

"Q. Did you give Mr. Glass that instruction?

"A. I did.

"Q. Did you instruct Verble Glass not to permit anybody else to drive his truck?

"A. Yes, sir.

"Q. Did you give him that instruction few times or many times?

"A. Well, I just don't remember. I think I might have told him twice about it.

"Q. Was that the instruction that you gave all of your drivers?

"A. All the drivers, yes, sir, not to let anybody ride with them when they drove the truck."

■ It was further shown by Bates Sullivan, son of defendant C. H. Sullivan, that he was instructed not to permit others to drive the truck he operated. On the other hand, Russell Maxwell, one of the defendant employer's truck drivers, testified that no instructions were given him not to permit any one to ride on the truck with him, until after the accident here involved. We think defendants have shown by a preponderance of the evidence that deceased had been instructed not to permit any other person to drive or ride the truck assigned to him.

Deceased worked on what was known as the night shift. On the occasion in question, deceased and Fred Billings went to the place where the logs were loaded on the truck and started to Memphis. Bates Sullivan saw Billings board the truck. Deceased had hauled logs on the night of the eighth, and had worked all day on the ninth moving his household stuff. So, on the night of the ninth, it appears he was very tired, having been without sleep or rest for some thirty-six hours. Nevertheless, deceased drove the truck, loaded with logs, to Memphis, and after

the logs were unloaded drove the truck back as far as Wolf river. Billings, his brother-in-law, had made the trip in order to help deceased at the wheel, and had driven some three and a half miles when on a curve in the highway the steering gear locked and the truck left the road and turned over, caught on fire, and deceased was burned. During the time Billings was driving, deceased was just sitting there by his side. There is no evidence that he was asleep.

It appears that Billings was an experienced automobile driver, was not going at an excessive speed at the time of the accident, and did all that it was possible to do to avoid the accident.

Unless the fact that deceased permitted Billings to relieve him at the wheel of the truck defeats compensation in the case, then compensation was properly allowed by the trial judge.

Section 6861 of the Code provides:

"No compensation shall be allowed for an injury or death due to the employee's willful misconduct or intentional self-inflicted injury, or due to intoxication, or willful failure or refusal to use a safety appliance or perform a duty required by law. If the employer defends on the ground that the injury arose in any or all of the above stated ways, the burden of proof shall be on the employer to establish such defense."

The determinative question, then, remaining in the case is whether or not the act of deceased in permitting Billings to relieve him at the wheel, under the circumstances shown, was such willful misconduct on his part as defeats a recovery of compensation in this case.

██ ██ It was held by this court in *Nashville, C. & St. L. Ry. Co.* v. *Wright*, 147 Tenn., 619, 250 S. W., 903, that

willful misconduct means something more than negligence and carries the idea of deliberation and intentional wrongdoing. Deceased had been without sleep for some thirty-six hours, and, after he had driven the truck to Memphis, and had covered a part of the distance on the return journey, he acted as if it were in an emergency and permitted Billings, an experienced driver, who had never had an accident, to relieve him at the wheel. Certainly, this action on his part could not be characterized as deliberate and intentional wrongdoing in disregarding instructions given him not to let another drive. The instructions given had reference to ordinary and normal conditions and not to abnormal and extraordinary conditions. He must have acted on this occasion in what he conceived to be the best interest of his employer. Had he remained at the wheel, in the physical condition he was in, an accident, involving the employer in liability, and damage to the truck, might have ensued. The situation presented is similar to a case where the driver of a truck becomes sick, or wounded, and in the stress of the emergency turns the wheel temporarily over to another. In such case it could not be argued with reason that the employee was guilty of intentional and willful violation of an order not to let another drive.

Deceased, in returning the truck to the log dump in Tipton county, was acting within the course of his employment. His death caused by an accident while on his master's business entitles petitioner to compensation.

We have examined with care the able briefs of counsel for defendants, and considered the authorities cited, but our conclusion is that the trial court reached the correct result in the case, and all assignments of error must be overruled and the judgment affirmed.