ELLIS, Judge.
This is a suit against New Amsterdam Casualty Company as the insurer of George Potter, recovery being sought under •the workmen’s compensation by Joseph Leon Douga. Plaintiff is presently interdicted and represented in these proceedings ;by his curator, Joseph D. Douga.
The trial court gave judgment for the •plaintiff finding him totally and permanently disabled as a result of an accident which •occurred in the scope of his employment .and granting him “the sum of $29.25 per week beginning on December 16, 1956 and •continuing during the disability of the said Joseph Leon Douga, not to exceed 400 weeks, with legal interest on each such payment from the date it became or becomes •due, until paid, and for all costs of this suit, subject to a credit of $672.75 paid by ;said defendant, representing payment of compensation from the date of the accident through May 26, 1957.”
The following facts appear in the record. Joseph L. Douga, known as Leon Douga, was employed by George Potter to drive a truck on a paper route delivering papers from Lake Charles to several nearby towns. Mr. Potter employed several drivers in the same capacity and each of these drivers had a special delivery route to cover on each trip. Leon Douga was to drive from Lake Charles to Hollingsworth, then to DeRid-der, Leesville, and back through Hollings-worth, to Bell, Reeves and LeBlanc, making deliveries at various points along the way. After making the final delivery, at LeBlanc he was to drive back to Lake Charles via Hollingsworth. At about 2:30 A.M. on the morning of December 16, 1956, Leon Douga left Lake Charles driving a truck belonging to George Potter to deliver his papers. He was accompanied by a sixteen year old boy named Nolan Breaux. Deliveries were made as usual until Leon Douga allowed Breaux to drive at a point near Hollingsworth. Deliveries were then made at several points ending at LeBlanc. Breaux then proceeded to drive back towards Lake Charles via Kinder. During this return trip, Leon Douga had fallen asleep. Breaux lost control of the truck and it overturned, seriously injuring the plaintiff, Leon Douga.
On the trial on the merits, the following stipulations were made. Leon Douga had been employed at a salary of $45 per week. Thus an award of $29.25 per week for the period of disability would be proper in the event that plaintiff should be entitled to recover under the workmen’s compensation statutes. New Amsterdam Casualty Company had paid the stated compensation for a period of 23 weeks from the date of the accident, the payments totalling $672.75. Defendant had also paid Burke Funeral Home $25 for ambulance service and Lake Charles Memorial Hospital $702.50 for medical services. Soon after he was injured, Leon’ Douga was sent to Veterans’ *245 Administration Hospital in Houston, Texas. After five months, he was transferred to the Veterans’ Administration Hospital in Alexandria, Louisiana, and was a patient there at the time of the trial.
Defense counsel stresses that Leon Dou-ga allowed his companion, Nolan Breaux, to take over the operation of the delivery-truck and then fell asleep prior to the time of the accident. By taking this course of action, it is contended that Leon Douga -“completely turned over his duties of operating and driving the truck to * * *, a sixteen year old boy * * * and then * * * proceeded - to go to sleep which was a pursuit entirely personal to him and having nothing to do with his employer’s business.”
A case which seems to cover the situation herein presented in an adequate manner is the out of state case of Malbis Bakery Company v. Collins, 245 Ala. 84, 15 So.2d 705, 707. In that case, decided by the Supreme Court of Alabama, the plaintiff was a bakery employee. His duties were to make deliveries at points from Mobile, Alabama to Pensacola, Florida. At the suggestion qf his immediate supervisor, Fred Pappas, he picked up several people. Later, he allowed one of them to drive the delivery truck along the route. The truck went out of control on a curve and the employee was injured. He sued his employer in order to recover workmen’s compensation.
One defense to this suit was that by permitting a third party to relieve him in driving the truck, the plaintiff abandoned his employment to such an extent as to take him entirely beyond the scope of his employment.
We quote from the pertinent portions of the decision as follows:
“The evidence further tended to show that after making one delivery in Mobile and while on the route, plaintiff requested Marsh to drive the truck because he was tired from long hours on duty; that the truck, with Marsh driving, loaded with the products of the defendant, which the plaintiff was charged with the duty of transporting, selling, and delivering, proceeded on its regular route; that after the truck had so proceeded about a mile, the truck overturned on a curve in the road and plaintiff was injured. :¡t ‡ *
“According to tendencies of the evidence, when Ashton Marsh took over the driving, the truck continued on its regular route in the transportation of the products of the bakery for sale by the plaintiff as the salesman of petitioner. The plaintiff did not abandon the truck. * * * He did not abandon his prescribed route nor the duty of selling and delivery on this route. On the contrary, up to the time of his injuries, plaintiff remained in the truck in furtherance of his duty to transport, sell and deliver the products of petitioner.
“Accordingly, we think it unnecessary to determine the extent of the authority of Sam Pappas to see if he had the right to allow the plaintiff to stop driving and permit Ashton Marsh to drive. Even though the plaintiff, contrary to instructions permitted Ashton Marsh to drive, the plaintiff did not thereby withdraw from the scope and sphere of his employment. The prohibition against permitting another to drive did not limit the sphere of employment. It dealt only with conduct within that sphere.”
Another out of state case in point is Glass v. Sullivan, 170 Tenn. 230, 94 S.W.2d 381, 382. In that case instituted under workmen’s compensation statutes, a truck driver was found to have certain duties of employment. These were to load his employer’s truck with logs, drive the truck to the delivery point, unload the logs, and return the empty truck to the delivery point. *246 On the occasion in question the employee was on the night shift and was tired. His brother-in-law, who was not a co-employee, came with the truck driver, to help him. In order that he might go to sleep, the employee allowed his brother-in-law to drive. The employee was either asleep or attempting to go to sleep when the gears locked and the truck overturned and burned. The employee, severely injured, died as a result of burns received in the accident. The following language found in this decision is both persuasive and pertinent, viz.:
“The instructions given had reference to ordinary and normal conditions and not to abnormal and extraordinary conditions. He must have acted on this occasion in what he conceived to be the best interest of his employer. Had he remained at the wheel, in the physical condition he was in, an accident, involving the employer in liability, and damage to the truck, might have ensued. The situation presented is similar to a case where the driver becomes sick, or wounded, and in the stress of emergency turns the wheel temporarily over to another. In such a case it could not be argued with reason that the employee was guilty of intentional and willful violation of an order not to let another drive.”
“Deceased, in returning the truck to the log dump * * * was acting within the course of his employment. His death caused by an accident while on his master’s business entitles petitioner to compensation.”
Counsel for defendant contends that the case of Moss v. St. Paul-Mercury Indemnity Company, La.App., 35 So.2d 867, as authority for his position that Leon Douga was injured outside of the scope of his employment. In that case a student employed as a bus driver for a school bus was injured while the bus he drove was being operated over the regular route and became involved in an accident. However, prior to the time of the accident, the plaintiff had turned over the operation of the bus to another driver, and turned aside from his employment to study for an examination. The Court of Appeal rendered judgment for the plaintiff in tort, finding that the workmen’s compensation statutes were not applicable as the plaintiff was not injured during the course and scope of his employment. It appears that there is a clear distinction between the fact situation presented in the Moss case and the fact situation presented in the case at bar. In the Moss case the plaintiff was engaged in a purely personal endeavor, whereas in the case at bar, plaintiff merely fell asleep while allowing another to drive the delivery truck. In so doing, he, perhaps, violated instructions and did not perform his duties in the best possible manner. Nevertheless, as in the Malbis case, cited above, these failings dealt solely with the employee’s conduct, within the sphere of his employment and did not take him outside of the sphere.
In this case Leon Douga had made all of the deliveries as he should and the only duties which remained at the time of the accident, was to return the truck to his' employer. This duty would appear to’ be an incidental part of his work, and his method of discharging it would not be controlling, at least, under the facts presented herein.
The cases of Ginther v. J. P. Graham Transfer Company, 348 Pa. 60, 33 A.2d 923, 148 A.L.R. 704 and Morris & Company v. Industrial Commission, 295 Ill. 49, 128 N.E. 727, were cited by counsel for defendant, as a basis for his contentions. These cases do present fact situations, which are very similar to the fact situation in the case at bar and in each of these the employee was found to be acting outside the course and scope of his employment. However, this court is not bound by these decisions and chooses to follow the reasoning in the Mal-bis case and the Glass case, both discussed, supra.
*247 In passing, we take note that there was a strong dissent in the Ginther case, which is cited above and relied upon by defendant herein. We quote from this dissent by Justice Horace Stern as follows:
“In order to test the correctness of this ruling we must first, of course, ascertain what the ‘duty’ was that was ‘entrusted to him’, and what his ‘employment’ was from the course of which he is said to have ‘removed himself.’ He was directed on the evening in question to make a delivery of some envelopes. This task he performed, and it then became his duty to see that the truck was returned to his employer’s garage. He was so engaged when the accident happened.” [348 Pa. 60, 33 A.2d 925].
The case of Como v. Union Sulphur Company, La.App., 182 So. 155, and Leckie v. H. D. Foote Lumber Company, La.App., 40 So.2d 249, were also cited by the defendant as regards the question of the extent of the scope of employment. These two cases may be distinguished from the case at bar in the same manner as was the Moss case. The employees involved in both of these cases had turned aside from the duties of their employers and were performing acts which were purely in their own interest and for their own benefit.
It is urged, on behalf of the defendant, that Joseph Leon Douga had deliberately breached a statutory regulation affecting the safety of life or limb and should, therefore, be denied compensation under the provisions of LSA-Revised Statutes 23:1081 (4). The basis of this contention is the fact that Nolan Breaux was allowed to drive employer’s truck, although he did not have a driver’s license or a chauffeur’s license at the time.
The following excerpt from Louisiana Workmen’s Compensation Law and Practice Section 342, page 451 by Professor Wex Malone should be noted here:
“An employee’s deliberate breach of a statutory regulation ‘affecting safety of life or limb’ will preclude his claim for compensation. There is an almost complete absence of Louisiana authority on this provision. It has been held that violation of a municipal traffic ordinance by an employee does not afford a defense to the employer.
“Presumably this provision would be handled with the same strictness which has been accorded the provision dealing with the deliberate failure to use a guard or safety appliance. Under the familiar adage that violation of a statute is .‘negligence per se’, it is clear that an interpretation liberal to the employer could serve to interject the idea of contributory negligence into compensation proceedings in full force. It is noteworthy that the breach must be ‘deliberate’. This restriction alone would serve to exclude most of the commonly recurring situations from the coverage of this provision. Furthermore, it is not unlikely that the defense would be restricted to violations of statutes dealing specifically with the safety of employees, as distinguished from general traffic laws, and similar enactments of broad purport.” (Emphasis ours.)
This does not seem to be a case within the purview of LSA-R.S. 23:108l(4). Nolan Breaux had driven for Douga several times prior to the night of the accident without mishap. The mere fact that he did not have any type of driver’s license did not affect his driving ability per se.
Leon Douga was apparently sleepy when he turned the wheel over to Breaux. Had Leon Douga gone to sleep at the wheel and wrecked the truck himself, the injuries resulting therefrom would unquestionably be compensable.
We are presented with a situation where a sleepy employee turns over the operation *248 of the truck which is in his charge to one whom he has reason to believe is a competent driver.
The recent case of Herring v. Hercules Powder Co., 222 La. 162, 62 So.2d 260, indicates that the Louisiana Supreme Court construes the above statutory exclusion quite strictly, giving the employee the benefit of any doubt.
The term “deliberate” is an interesting one. As pointed out by the attorney for the plaintiff, there has been at least one definition of the word “deliberate” in Louisiana jurisprudence. In the case of McClendon v. Louisiana Central Lumber Company, 17 La.App. 246, 135 So. 754, the following language is found:
It has generally been held that “deliberate” is not synonymous with “intentional”, and that the term suggests an obstinate, headstrong attitude on the part of the employee, who was aware of the danger and was prompted to discard the available safety device through a sense of daring.
Accordingly, the provision of Revised Statutes LSA-R.S. 23:1081(4) will not be applied here.
It is also urged on the defendant’s behalf that the plaintiff had express instructions not to allow riders. These instructions would, by their very nature, include a prohibition against allowing anyone else to drive. It is contended that in so doing he withdrew from the scope of his employment.
There was considerable conflicting testimony on the question of whether or not the instructions were actually given. Assuming, arguendo, that they were given, this seems to be another situation in which the distinction made above is applicable.
The violation of the employer’s instructions dealt with the manner in which the employee discharged the duties within the scope of his employment. This was not the type of violation which would ordinarily take him beyond the scope of his employment.
The fact that the accident occurred beyond the prescribed route was also stressed by the defendant. This point seems irrelevant, since Nolan Breaux’ uncontradicted testimony was that he and Douga had driven towards Lake Charles through Kinder to see if that route were shorter. This purpose is in line with Douga’s employment and to his employer’s interest.
The plaintiff’s attorney contends, on appeal, that the maximum of $1,000 for medical expenses should be allowed. Leon Douga, as a veteran, has had access to veterans’ hospitals and the services there at no personal charge to him. However, we are not at liberty to determine this item of damage as there is a lack of competent evidence in the record regarding the actual cost of Douga’s hospital care.
The trial court was correct in reserving to plaintiff the right to claim future medical expenses which might be incurred. Gloston v. Coal Operators Casualty Co., La.App., 85 So.2d 100.
For the reasons assigned, the trial court’s judgment herein is affirmed in all respects and costs of this appeal are taxed to the defendant.
Affirmed.